IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **NOLAN KINARD FLOYD, SR.,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-21-3292 |
| **WARDEN FREDRICK ABELLO,** *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Nolan Kinard Floyd, Sr., who is self-represented, filed suit for damages pursuant to 42 U.S.C. § 1983 against Warden Fredrick Abello, Chief of Security Tyrell Wilson, Major Daniel Ogunmodede, Shift Supervisor Nurudeen Matti, and Corporal Humphrey Adusei. ECF 1 & 4. Floyd alleges that he was housed in unsanitary conditions and that he was subjected to excessive force. *Id.* The Court previously dismissed the claims against Ogunmodede and Matti. ECF 6. Abello, Wilson, and Adusei filed an answer and now move for summary judgment. ECF 16. Pursuant to this Court's order, Floyd had until June 29, 2023 to file a response to the motion. *See* ECF 21; ECF 22, at 2. He has not done so. No hearing on the motion is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the defendants' motion for summary judgment is granted, and Floyd's claims are dismissed without prejudice as unexhausted.

**I.      Background**

In his verified complaint and his declaration in support of his complaint, Floyd asserts that, as a pretrial detainee at Baltimore Central Booking & Intake Center ("BCBIC") from February 28 to March 4, 2019, he was kept in an "inhumane environment" without a shower and in a cell that was "filled with bacteria, blood, vomit, feces and urine." ECF 1, at 3; *see* ECF 4, at 2 (supp.); ECF 13, at 1–2 (decl.). (Floyd's Inmate Traffic History shows that he was housed at BCBIC from

March 1, 2019 until his transfer to Jessup Correctional Institution ("JCI") on March 4, 2019. ECF 16-3, at 3.) Floyd states he developed pink eye, hives, and rashes on his arms as a result of the conditions. ECF 1, at 3; ECF 13, at 1–2.

Floyd asserts that he informed Adusei about his pink eye and rashes on March 4, 2019 and asked to speak to a supervisor and to receive medical attention. ECF 1, at 4. According to Floyd, Adusei responded: "you are not getting a shower, supervisor or medical so step your dumb ass back in the cell." *Id.* Floyd claims that when he then asked to speak with a supervisor, Adusei sprayed him with an MK9 fogger. *Id.* Floyd alleges that Abello and Wilson are responsible for the actions of their officers and for failing to train those officers to follow procedures as well as for the overall conditions of BCBIC. ECF 4, at 3.

Adusei states that on March 4, 2019, he went to cell 2C66 to escort two detainees to another housing assignment, but Floyd stood in the doorway preventing it from closing. ECF 16-7, ¶¶ 4, 5. Two other detainees, Darrell and Darian Lisbon (not the two to be escorted), also exited the cell and refused Adusei's orders to return inside. *Id.* ¶ 6. Darian Lisbon punched Adusei, causing him to fall to the floor. *Id.* at ¶ 7. Adusei deployed his mace-like spray towards Darian Lisbon's face as Darrell Lisbon and Floyd also punched, kicked, and stomped on him. *Id.* All three men then ran away down the hallway until Adusei and other staff were able to handcuff them. *Id.* ¶ 8. Adusei suffered a laceration to his forehead and swelling to his face. *Id.* ¶ 9. Floyd was charged and found guilty of violating Rule 101 and served 45 days in administrative segregation. ECF 16-9 & 16-11. He also was charged and convicted in the Circuit Court for Anne Arundel County for second-degree assault based on this incident. ECF 16-7, ¶ 12.

Floyd's medical records show that he was seen by Dr. Bai Kanu on March 4, 2019 for a physical exam. ECF 16-4, at 49. During that appointment, Floyd requested dental care and

treatment for a rash in his groin area.  *Id.*  Dr. Kanu noted a dry/scaling rash on Floyd's thigh.  *Id.* at 50.  Dr. Kanu noted that Floyd, who had been in an altercation earlier in the day, denied that he had "burning eyes, discharge, foreign body sensation, itching eyes, eye pain, eye redness, scotoma, tearing, [or] vision loss," or any other need for treatment related to the incident.  *Id.* at 49.

**II.      Standard of Review**

The defendants move for summary judgment to be granted in their favor pursuant to Federal Rule of Civil Procedure 56.  Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position.  Fed. R. Civ. P. 56(c)(1)(A).  The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  The Court must "view the evidence in the light most favorable to the nonmoving party" and avoid "weigh[ing] the evidence or mak[ing] credibility determinations." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (quoting *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)) (internal quotation marks omitted).  However, the Court also must abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).  A factual dispute is genuine only where there is sufficient evidence to permit a reasonable jury to find in the nonmoving party's favor.  *Id.*; *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019).  "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Humphreys & Partners Architects*, 790 F.3d at 540 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

## III.   Discussion

The defendants assert that they are entitled to summary judgment because Floyd failed to exhaust his administrative remedies at BCBIC before filing the complaint.  ECF 16-1, at 17.  The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).  Exhaustion under § 1997e(a) is mandatory, and therefore the plaintiff must exhaust his available administrative remedies before this Court will hear his claim.  *See Ross v. Blake*, 578 U.S. 632 (2016); *Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005).  In consequence, if Floyd has not properly presented any of his

claims through an available administrative remedy procedure, that claim must be dismissed pursuant to the PLRA. *See Ross*, 136 S. Ct. at 1857.

BCBIC, which is operated by the Division of Pretrial Detention and Services ("DPDS"), has a four-step grievance procedure, and detainees are informed that they must follow those four steps. ECF 16-5, ¶¶ 2–4 (citing DPDS Directive No. 180-1). First, at Step I, the detainee must file "a Resident Complaint Form within 15 calendar days of the incident giving rise to the grievance, after which the RGO has 20 days to respond. *Id.* ¶ 3. At step II, the detainee files a "Motion for Grievance Committee" and, at Step III, within 3 days after a decision on that motion, the detainee must file a "Motion to Appeal to Warden." *Id.* Finally, at Step IV, within 5 days after a decision on that appeal, the detainee must file a "Motion for Appeal to the Assistant Commissioner." *Id.* The Resident Grievance Office ("RGO"), rather than the Inmate Grievance Office ("IGO"), has exclusive jurisdiction over pretrial detainees' grievances. *Id.* ¶ 5; *see* ECF 4, at 2 (Floyd's acknowledgement that pretrial detainees, unlike convicted inmates, "must file 180-1 forms within the institution").

Here, the parties dispute whether Floyd filed a Step I grievance complaining about the conditions of his cell or the alleged excessive force. Floyd claims that he filed a 180-1 grievance form (also called a Resident Complaint Form) at BCBIC but never received a response. ECF 4, at 2. Kelvin L. Harris, Director of Standards, Compliance and Litigation for DPDS, asserts, based on a search of the RGO records, that Floyd did not file any timely Step I grievances in 2019 regarding the issues alleged in his complaint. ECF 16-5, ¶ 6.

Regardless whether Floyd filed the initial grievance, the record shows that he did not pursue the available remedies at Steps II, III, or IV. Floyd asserts that he wrote to the IGO about his complaints, ECF 4, at 2, but he does not assert he followed Steps II, III, or IV. Harris states

the RGO records show Floyd did not complete Steps II through IV.  ECF 16-5, ¶ 6.  Because Floyd failed to complete the four-step administrative remedy process at BCBIC, he has failed to administratively exhaust the claims in his complaint.  Therefore, the defendants are entitled to summary judgment in their favor.

**IV.     Conclusion**

By separate order that follows, the defendants' motion for summary judgment is granted.[1] Floyd's claims are dismissed without prejudice to his right to bring them in a new civil action if he first exhausts them.  *See Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021) (affirming grant of summary judgment and dismissal without prejudice for failure to exhaust and noting it was "consistent with precedent" to dismiss without prejudice, even after granting summary judgment, if the claims might later be exhausted); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (affirming summary judgment on alternative ground of failure to exhaust, but modifying to dismiss unexhausted claims "without prejudice to [the plaintiff's] right to refile should exhaustion become complete").

 December 21, 2023
Date

Deborah L. Boardman
United States District Judge

---

[1] Because Floyd's claims are unexhausted, the Court need not address the defendants' remaining arguments.